UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN H.,<br>              Plaintiff,<br><br>      v.<br><br>KILOLO KIJAKAZI,<br>              Defendant. | Case No. 22-cv-02864-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15, 16 |

Plaintiff John H. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied his application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. [Docket No. 15.] The Commissioner cross-moves to affirm. [Docket No. 16.] For the reasons stated below, the court denies Plaintiff's motion and grants the Commissioner's cross motion.

**I.  PROCEDURAL HISTORY**

Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits on March 10, 2020, alleging disability beginning March 1, 2015. Administrative Record ("A.R.") 166-67. The application was initially denied on June 3, 2020 and again on reconsideration on October 7, 2020. A.R. 97-100, 105-111. An Administrative Law Judge ("ALJ") held a telephonic hearing on May 25, 2021 and issued an unfavorable decision on August 5, 2021. A.R. 17-35. The ALJ determined that Plaintiff has the following severe impairment: major depressive disorder. A.R. 23. The ALJ found that Plaintiff retains the following residual functional capacity ("RFC"):

> [T]he claimant had the had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no exertional limits, is precluded from performing complex and detailed tasks but remains capable of performing short, simple, repetitive tasks in a routine work

> environment, able to maintain concentration, persistence and pace for two hour increments which presupposes that the morning break, lunch break and afternoon break would form the natural barriers for those increments, no more than occasional work with coworkers and supervisors, and no work with the general public and no work on assembly lines or similar production-paced type jobs.

A.R. 25. Relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform other jobs existing in the economy, including assembler, production; office clerk paster; clerk/addresser; and packer, the ALJ concluded that Plaintiff is not disabled. A.R. 33-35.

After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g).

## II. ISSUES FOR REVIEW

1. Did the ALJ err in weighing the medical evidence?
2. Did the ALJ err in evaluating Plaintiff's credibility?
3. Did the ALJ err in evaluating the lay witness testimony?
4. Did the ALJ err in finding that Plaintiff can perform the jobs identified by the VE?

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112

1  F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's
2  decision for harmless error, which exists when it is clear from the record that the ALJ's error was
3  inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d
4  1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV. DISCUSSION

### A. The ALJ's Weighing of the Medical Opinions

#### 1. Legal Standard

Plaintiff filed an application for disability benefits after March 27, 2017. Therefore, the court analyzes the claim under the Social Security Administration's ("SSA") regulations and Social Security Rulings regarding the evaluation of medical opinion evidence that became applicable as of that date. This includes SSR 96-2p, "Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions." *See Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p*, SSR 96-2P (S.S.A. Mar. 27, 2017). Under the new regulations, the SSA will no longer give "any specific evidentiary weight, including controlling weight," to medical opinions or prior administrative medical findings, including those from treating physicians. 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a). Instead, the SSA must evaluate the "persuasiveness" of all medical opinions based on several factors, including supportability, consistency, the source's relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, whether the source has examined the claimant, any specialization, and other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. 20 C.F.R. § 404.1520c(a), (c), 20 C.F.R. § 416.920c(a), (c). The two most important factors in determining the persuasiveness of medical opinions are consistency and supportability. *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)); *see also* 20 C.F.R. § 416.920c(a).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [they] considered the medical opinions' and 'how persuasive [they] find all of the medical

3

opinions." *V.W. v. Comm'r of Soc. Sec.*, No. 18-CV-07297-JCS, 2020 WL 1505716, at *14 (N.D. Cal. Mar. 30, 2020). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. "The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings. *Id*. (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)) (internal citations omitted); *see also* 20 C.F.R. § 416.920c(b)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92; *see also* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be"). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792; *see also* 20 C.F.R. §§ 404.1520c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be").

When rejecting a medical opinion as unsupported or inconsistent, the ALJ is required to "provid[e] an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

### 2. Analysis

Plaintiff contends the ALJ erred in finding the opinions of Jana Klass, LMFT and Dana Rosca, MD, unpersuasive. He also argues that the ALJ erred in finding the opinions of Hiroyuki Ide, MD, and Yutaka Minohara, MD unpersuasive.

#### a. Klass and Rosca

Jana Klass, LMFT, and Dana Rosca, MD completed a Mental Disorder Questionnaire Form and Short Form Evaluation for Mental Disorders on May 13, 2020 (together, "the evaluations"). A.R. 421-25 A.R. 426-30. Although both Klass and Dr. Rosca signed the evaluations, it appears that they are primarily based on Klass's treatment of Plaintiff because they both state that Plaintiff was first examined on March 23, 2015 and Dr. Rosca did not see Plaintiff

4

until April 2020. *See* A.R. 421, 426, 433 (note regarding Dr. Rosca's first visit). The ALJ referred to the evaluations as "Klass' assessment." A.R. 30-31.

According to the evaluations, Plaintiff's first examination was on March 23, 2015, following a ten-day hospitalization "for grave disability/psychotic [symptoms] & paranoid ideation & withholding food/[water]." A.R. 421, 425. His last examination was on May 4, 2020. In response to a question about the frequency of visits, Klass and Dr. Rosca wrote, "2 to 10x per month- with IOP med management & individual therapy." A.R. 425.

Klass and Dr. Rosca opined that the onset of Plaintiff's "severe symptoms" was in March 2015. Symptoms include depressed mood, anhedonia, hypersomnia, decreased energy, poor sleep, guilt/shame, hopelessness, impair focus/concentration, suicidal ideation with recurrent thoughts of death, paranoid ideation, avoidant behavior, hypervigilance, flashbacks, exaggerated startled response, excessive worry and psychic numbing. A.R. 421. Plaintiff's appearance was noted to be clean and groomed with poor eye contact and slow speech, and Plaintiff "often seems internally preoccupied." A.R. 421. Plaintiff's current mental status was pleasant, cooperative, generally treatment compliant and receptive to support. Plaintiff described himself as despondent, self-loathing, and burdensome, and "deems himself incapable of returning to work." A.R. 422.

Klass and Dr. Rosca opined that Plaintiff "demonstrates impaired focus/concentration, at times has difficulty staying on tasks and following through w/primary responsibilities." A.R. 422; 424. They opined that Plaintiff is capable of maintaining hygiene but requires his wife's support with household and childcare responsibilities and shows poor judgment with his personal finances. A.R. 423. Klass and Dr. Rosca diagnosed Plaintiff with major depressive disorder, recurrent, severe with psychotic features; PTSD; and OCPD, and concluded that Plaintiff "has not shown any improvement within the past 5 years." A.R. 425. According to Klass and Dr. Rosca, Plaintiff is "unable to maintain work/career due to severe mood [symptoms] that impair overall functioning." A.R. 424.

The Short Form Evaluation for Mental Disorders lists the diagnoses of major depressive disorder, recurrent, severe with psychotic features; PTSD; and OCPD. Klass and Dr. Rosca answered "up to 3x per month" in response to a question about the "frequency of visits." A.R.

426. They checked "fair" or "poor" for every category of functioning, including understanding, remembering, and carrying out simple instructions and maintaining concentration, attention and persistence. A.R. 429.

The ALJ summarized the evaluations and found Klass and Dr. Rosca's opinions were not persuasive. A.R. 30-31. The ALJ described the statement in their mental disorder questionnaire form that Plaintiff had shown no improvement in five years but noted that Klass had not treated Plaintiff since 2016 and had not seen him in five years. A.R. 30. The ALJ also noted that "[t]he assessment appears to be based on the claimant's subjective reports" and stated that Plaintiff's treating sources, including Klass, had "questioned his veracity and referred to his lying as pathological." A.R. 30. The ALJ also noted an inconsistency in the two evaluations regarding the frequency of Plaintiff's treatment/visits. The mental disorder questionnaire form stated that Plaintiff received treatment "2 to 10x per month," while the short form evaluation stated up to three times per month. *See* A.R. 31, 425, 426.

Additionally, the ALJ stated that even though the evaluations diagnose Plaintiff with major depressive disorder, recurrent, severe with psychotic features, "psychotic features were not consistently reported in the treating notes." A.R. 31. Further, the ALJ noted that mental status examinations were "inconsistent with . . . Klass's report of impaired memory, severely restricted concentration, anxious mood, fearfulness, and rapid speech." A.R. 31.

In reviewing the record as a whole, the court finds that substantial evidence supports the ALJ's determination that Klass and Dr. Rosca's opinions were not persuasive. Plaintiff was hospitalized for a serious psychotic episode in March 2015, during which time he believed that his wife was poisoning him and refused to eat, drink, or take medications. *See* A.R. 297-372. He was diagnosed with major depressive disorder, recurrent episode with psychotic features and discharged on March 20, 2015. A.R. 295, 327. By July 2015 Plaintiff's providers had updated his diagnosis to major depressive disorder, recurrent episode, in partial remission, A.R. 289-90, and the record does not contain any evidence of subsequent psychotic episodes.

It appears that Plaintiff began treatment with Klass in April 2015. The record contains Klass's notes of two phone calls with Plaintiff in April 2015. A.R. 293. The record also appears

6

to document that Plaintiff had office visits with Klass several times in 2015 and 2016, but there are no treatment notes or other documentation of these visits or phone calls in the record. *See* A.R. 284 (listing office visits with Klass on 11/19/15, 1/12/16, 2/11/16, 4/12/16, 5/5/16). It appears that his last contact with Klass for treatment was in May 2016. *See* A.R. 281 (note that Plaintiff "has not been linked to the clinic since May, 2016"). Plaintiff next contacted Klass on April 6, 2020 to ask about SSDI benefits. Klass documented the contact: "I think he is inquiring about SSDI. I found a massive stack of paperwork in my inbox. I haven't seen him since 2016." A.R. 453. Despite the notation in Klass and Dr. Rosca's evaluations that Plaintiff's most recent visit was on May 4, 2020, the record contains no documentation of treatment by Klass or Dr. Rosca between 2016 and May 13, 2020, the date of the evaluations. As noted, Dr. Rosca first saw Plaintiff on April 24, 2020, but there is no corresponding treatment note for that visit. *See* A.R. 433 (progress note by Dr. Rosca, "[i]nitially seen on 4/24/2020"), 464 (6/10/20 letter from Dr. Rosca stating, "I have been [Plaintiff's] provider since 4/24/2020.").

This timeline supports the ALJ's conclusion that Klass's assessment of Plaintiff's lack of improvement in five years was not persuasive because she had not treated Plaintiff since May 2016. Moreover, Klass and Dr. Rosca completed their evaluations of Plaintiff on May 13, 2020. Nothing in the record indicates that they had treated him between April 6, 2020, when he first called to ask about SSDI, and the date of their May 13, 2020 evaluations, further undermining the persuasiveness of their conclusions. This apparent lack of firsthand knowledge of Plaintiff's symptoms or mental health condition since May 2016 supports the ALJ's observation that Klass and Dr. Rosca relied on Plaintiff's "subjective reports" even though treating sources had "questioned his veracity." A.R. 30. Specifically, Klass wrote in a June 2020 treatment note that Plaintiff's "lying seems to be pathological," A.R. 447, and the mental disorder questionnaire form repeatedly references Plaintiff's own reports of his condition. It includes the following statements: "Pt states, 'my condition is long term & chronic.' Feels that [symptoms] impair overall function[ ]"; "describes himself as despondent . . ."; "reports perceptual thinking disturbances"; and "Pt reports severe social impairment." A.R. 421-24. Notably, the evaluations themselves do not clearly state whether they are based on Plaintiff's subjective reports, the

7

providers' own observations and experience treating Plaintiff, testing, or something else.

The ALJ also explained that the evaluations were not persuasive because "psychotic features were not consistently reported in the treating notes" and that mental status examinations were inconsistent with the evaluations' observations of impaired memory, severely restricted concentration, anxious mood, fearfulness, and rapid speech.  A.R. 31.  The record contains treatment notes from ten counseling sessions and appointments with Klass and Dr. Rosca post-dating the May 13, 2020 evaluations.  A.R. 433, 444, 447, 453, 477, 497, 506, 509, 538, 568, 596.  They documented mental status examinations for seven of the ten visits, all of which were within normal limits with no exceptions.  *See* A.R. 445, 448, 478, 498, 507, 539, 569, 596.  Further, none of the treatment notes corresponding to visits with Klass or Dr. Rosca at any time, including visits from 2015, document psychotic features.  *See* A.R. 293 (Klass's notes from two phone calls with Plaintiff in April 2015).

The court concludes that the ALJ properly considered the lack of supportability and consistency when assessing the persuasiveness of Klass and Dr. Rosca's opinions, and that the ALJ's explanation was supported by substantial evidence.  *Woods*, 32 F.4th at 792.  Accordingly, the court finds no error with respect to those opinions.

### b.     Ide and Minohara

Plaintiff moved to Japan at some point in 2020.  *See* A.R. 55, 446.  Hiroyuki Ide, MD, one of Plaintiff's treating providers in Japan, wrote an opinion on May 7, 2021.  A.R. 604-07.  Dr. Ide wrote that he had seen Plaintiff three times.  A.R. 606.  Dr. Ide described Plaintiff's symptoms of poor sleep, depressed mood, irritability, inability to concentrate, fatigue, guilt and self-blame, challenges with "self-care and general hygiene," and weight gain and noted that the symptoms were consistent with major depressive disorder.  A.R. 606.  Dr. Ide diagnosed major depressive disorder and wrote that Plaintiff "has a problem with concentration and accomplishing tasks," noting that "[t]he common tasks of taking the commuter train or going shopping for groceries can be overwhelming."  He further noted, "[w]hile many Americans in Japan can readily get a job teaching English classes for example, this or any other employment anywhere would be impossible for him right now with this diagnosis."  A.R. 607.

1    Yutaka Minohara, MD, another treating provider in Japan, wrote an opinion on May 14,
2    2021. A.R. 608-08. Dr. Minohara wrote that he first met with Plaintiff on November 10, 2020
3    and that from November 2020 to March 2021, he met with Plaintiff twice per month "to monitor
4    his prescription of 10mg Lexipro 1x and 2.5 mg Olanzapine 2.5mg to help alleviate symptoms of
5    depression and anxiety," and "also conducted talk therapy with" Plaintiff. A.R. 609. Dr.
6    Minohara then referred Plaintiff to Dr. Ide. A.R. 609. Dr. Minohara diagnosed Plaintiff with
7    major depressive disorder. He opined that Plaintiff's "depression makes it difficult for him to
8    accomplish the basics of day-to-day living including dressing, hygiene and nutrition," and that his
9    depression and anxiety make it "extremely difficult" to "concentrate and focus on goal-oriented
10   tasks such as shopping or commuting." A.R. 609. He also noted that Plaintiff is "cooperative
11   with his treatment plan." A.R. 609.

12   The ALJ summarized these opinions and wrote that they "are not supported by the mental
13   status examinations as discussed in this decision"; "are inconsistent with the multiple treating
14   source statements who treated the claimant over time"; and "neither doctor provided any treating
15   records or mental status examination to explain the claimant's current deterioration." A.R. 31-32.
16   The ALJ also found that Plaintiff's ability to "help his children with homework, drive a car, go to
17   the beach and watch TV with little apparent problem" contradicted the opinions that Plaintiff
18   "would have extreme difficulty concentrating and focusing on goal-oriented tasks such as
19   shopping or commuting." A.R. 32. The ALJ further noted that "[t]he overall treatment records
20   indicate that the claimant's medication has helped the claimant in terms of sleep and depressive
21   symptoms," citing the medical records. A.R. 32 (citing Exs. 4F, 5F).

22   Substantial evidence supports the ALJ's determination that Dr. Ide and Dr. Minohara's
23   opinions were not persuasive. The two most important factors in determining the persuasiveness
24   of medical opinions are consistency and supportability. *Woods*, 32 F.4th at 791. As to
25   supportability, the record does not contain any treatment notes from either provider; their opinions
26   are not supported by any findings. The ALJ also noted that the opinions were not supported by the
27   mental status examinations. As discussed above, the mental status examinations in the record
28   from 2020 were all within normal limits. *See* A.R. 445, 448, 478, 498, 507, 539, 569, 596.

9

As to consistency, the ALJ wrote that the opinions were "inconsistent with the multiple treating source statements who treated the claimant over time." A.R. 32. Plaintiff disputes this, arguing that Klass and Dr. Rosca are the treating sources "who treated [Plaintiff] over time." He contends that Dr. Ide and Dr. Minohara's opinions were consistent with Klass and Rosca's opinions. Mot. 14. Dr. Ide's opinion that "any . . . employment anywhere would be impossible for him right now with this diagnosis" and Dr. Minohara's opinion that Plaintiff's depression "makes it difficult to accomplish the basics of day-to-day living" and problems with concentration and focus are generally consistent with Klass and Dr. Rosca's opinion that Plaintiff is "unable to maintain work/career due to severe mood [symptoms] that impair [his] overall functionality." *See* A.R. 424. Nonetheless, as discussed above, the ALJ found Klass and Dr. Rosca's opinions were not persuasive in part because they were inconsistent with Plaintiff's normal mental status examinations. Any error in this portion of the opinion was harmless because Dr. Ide and Dr. Minohara's opinions about Plaintiff's limitations were inconsistent with Plaintiff's consistently normal mental status examinations. *See Alaska Dep't of Envtl. Conserv. v. EPA,* 540 U.S. 461, 497 (2004) (an error is harmless if it is "inconsequential to the ultimate nondisability determination" or "if the agency's path may reasonably be discerned," even if the agency "explains its decision with less than ideal clarity" (internal quotation marks omitted)).

The ALJ also found that Dr. Minohara's opinion about Plaintiff's extreme difficulty in "concentrat[ing] and focus[ing] on goal oriented tasks such as shopping or commuting . . . because of the depression and anxiety" was inconsistent with his ability to help with homework, drive a car, go to the beach, and watch TV "with little apparent problem." A.R. 32. Plaintiff takes issue with this, arguing that Plaintiff could only do these activities "with extensive help or encouragement from [his] wife," Mot. 14, but the record does not support this claim. In the Function Report—Adult that Plaintiff completed on March 29, 2020, Plaintiff described "the kinds of things you do with others" as "[e]ating together, homework, taking drives, watching movies at home" on a daily basis without qualification. A.R. 202. He also wrote that he goes outside "once a day on [average]," either by walking, driving, or riding in a car, can go out alone, and that he shops for food once per week, A.R. 201, all of which is inconsistent with Dr. Minohara's opinion.

10

Finally, the ALJ observed that "[t]he overall treatment records indicate that the claimant's medication has helped the claimant in terms of sleep and depressive symptoms." The record supports this observation. *See*, e.g., A.R. 433 (5/15/20 progress note re: medications helping him sleep with no worsening in symptoms); 444 (6/9/20 progress note re: improved sleep with no worsening in symptoms, "[m]aybe slight improvement in mood with Prozac, feels more realistic"); 596 (10/22/20 progress note re: "doing ok, mood and sleep is ok").

The court finds that the ALJ properly considered the lack of supportability and consistency when assessing the persuasiveness of Dr. Ide and Dr. Minohara's opinions, and that the ALJ's explanation of the same was supported by substantial evidence. *Woods*, 32 F.4th at 792. Accordingly, the court finds no error with respect to those opinions.

### B.  The ALJ's Credibility Determination

#### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs*., 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)). However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id*. at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (stating that an ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony"). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v.*

11

1  *Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

2      The determination of whether or not to accept a claimant's testimony regarding subjective
3  symptoms requires a two-step analysis. 20 C.F.R. § 404.1529; *Smolen*, 80 F.3d at 1281 (citations
4  omitted). First, the ALJ must determine whether or not there is a medically determinable
5  impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §
6  404.1529(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an
7  underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of
8  symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged
9  severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc)
10 (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must
11 provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez
12 v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The Ninth Circuit has reaffirmed the "specific, clear
13 and convincing" standard applicable to review of an ALJ's decision to reject a claimant's
14 testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2. Analysis

The ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." A.R. 26.

The ALJ provided two general reasons for discounting Plaintiff's testimony: 1) that his "statements about the intensity, persistence, and limiting effects of his symptoms . . . are inconsistent because as discussed in this decision the claimant has a gap in medical treatment and his allegations are not supported by his treating sources mental status examinations, A.R. 26, 29; and 2) "there are general inconsistencies in [Plaintiff's] allegations of disability," discussing activities Plaintiff described in his Function Report. A.R. 28-29.

As to the first reason, the ALJ discussed Plaintiff's treatment history at length. A.R. 26-29. In particular, the ALJ noted that Plaintiff was hospitalized in March 2015 for a psychotic episode and was diagnosed with major depressive disorder, recurrent episode with psychotic

12

features. A.R. 294-95. His providers deemed his condition to be in partial remission a few months later, A.R. 289-90, and his mental status examinations were normal with "[n]o psychosis." A.R. 287, 289, 290. Plaintiff was treated by Klass in 2015 and 2016 but last saw her May 2016. In November 2016, Plaintiff contacted Kaiser requesting "an urgent appointment to obtain a letter excusing him from an upcoming deposition hearing on 11/17/16." A.R. 281. It appears that he did not seek mental health treatment again until March 2020, when he contacted Kaiser for treatment for depression and asked Klass about SSDI. A.R. 453, 454. Once he resumed treatment, his providers documented that he showed good response to therapy and medication. *See*, e.g., A.R. 433 (5/15/20 progress note, "doing ok," "[e]asier to fall to sleep . . . [l]ess anxious when wakes up in the middle of the night. No worsening in sxs"); 444 (6/9/20 progress note, "ok," "[s]leep is better . . . slight improvement in mood with Prozac"); 478 (6/29/20 progress note, "[o]verall status is better managed . . . [t]hinking is less intrusive . . . [n]otes improved sleep."); 538 (9/4/20 progress note, "pt seemed to have more insight into his illness"). Further, as discussed above, once Plaintiff returned to treatment after a several-year break, his mental status examinations were consistently normal. *See* A.R. 29 (discussing mental status examinations). Plaintiff argues that the ALJ should not use his lack of treatment as a reason to discount his credibility, Mot. 17, but there is no evidence in the record supporting that Plaintiff was unaware of his need for treatment or unable to access it.

The ALJ also discussed Plaintiff's activities and concluded that they were inconsistent with his claims about his limitations. A.R. 28-29. As the ALJ noted, Plaintiff reported that he could eat meals with his family; help his children with homework; watch moves; and take drives, all of which the ALJ found "require the ability to concentrate and maintain attention." A.R. 29. The ALJ also noted that Plaintiff described going to the beach, school, and the playground prior to the COVID-19 pandemic, which undermines Plaintiff's claim that "his attention is limited to 15 minute increments and he has difficulty leaving his home." A.R. 29. Of course, "[w]hile a claimant need not 'vegetate in a dark room' in order to be eligible for benefits," the Ninth Circuit has explained that everyday activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674

1  F.3d 1104, 1112-13 (9th Cir. 2012) (internal citations and quotation marks omitted).

2  Finally, the ALJ considered her own observations of Plaintiff during the hearing. The ALJ
3  noted that Plaintiff "was able to answer questions and participate in the hearing for more than 40
4  minutes," and that he participated from Japan, where it was about 2:00 a.m. A.R. 29. The ALJ
5  found his presentation was inconsistent with his allegations of "severely limited concentration and
6  focus." A.R. 29. The ALJ reasonably relied on her own observations in evaluating Plaintiff's
7  credibility.

8  Ultimately, "[i]f the ALJ's credibility finding is supported by substantial evidence in the
9  record, [courts] may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th
10 Cir. 2002), and "the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v.*
11 *Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). The court finds that the ALJ did so here by
12 identifying "specific, clear, and convincing reasons supporting a finding that [Plaintiff's]
13 limitations were not as severe as [he] claimed." *Id*. (quotation marks and citation omitted). The
14 court finds that the ALJ did not err with respect to the credibility determination.

### C. The ALJ's Consideration of Lay Witness Testimony

#### 1. Legal Standard

Testimony provided by a lay witness as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence to be taken into consideration by an ALJ unless he or she expressly discounts such evidence and provides "reasons germane to each witness" for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), *superseded on other grounds by regulation*. An ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

#### 2. Analysis

Plaintiff argues that the ALJ improperly rejected the lay witness testimony of his wife, Miyuki Sato, who completed a Function Report—Adult—Third Party on April 6, 2020. *See* A.R. 206-213. The ALJ summarized her statement, A.R. 29, but did not give any reasons for

14

discounting it. The Commissioner argues that the court should not apply the "germane reasons" standard based on the 2017 changes to the Social Security regulations. Opp'n 12. However, the Ninth Circuit has expressly declined to reach this issue, *see Weitman v. Kijakazi*, No. 21-35748, 2022 WL 17175060, at *2 n.4 (9th Cir. Nov. 23, 2022), and has applied the germane reasons standard as recently as this month. *See, e.g., Eichenberger v. Kijakazi*, No. 22-35937, 2023 WL 5928483, at *2 (9th Cir. Sept. 12, 2023).

Nonetheless, the court concludes that any error with respect to the statement was harmless. The Ninth Circuit has held that an ALJ does not "commit prejudicial error by discounting" lay witness testimony that does "not describe any limitations not already described by the claimant," because "[t]he ALJ's well-supported reasons for rejecting [the claimant's] testimony apply equally well to the lay witness testimony." *See, e.g., Peebles v. Kijakazi*, No. 22-35841, 2023 WL 5567156, at *2 (9th Cir. Aug. 29, 2023) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012) ("[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se.")).

In this case, Ms. Sato described Plaintiff's "challenges in focusing, socializing and self care." A.R. 206. Plaintiff dresses himself, showers, and shaves, but Ms. Sato wrote that she has to remind him to "shave, get a hair cut or trim his nails." A.R. 207-08. She wrote that Plaintiff does small chores around the house but that she has to remind him to do so, and that he goes outside about once per day and walks, drives, or rides in a car. A.R. 208-09. She wrote that "he can drive to run small errands," and that she does the majority of shopping "but occasionally [she] can ask him to get something at the store." A.R. 209. According to Ms. Sato, Plaintiff "tends to withdraw" and spend time alone and avoids social events. His condition affects his talking, memory, completing tasks, concentration, following instructions, and getting along with others. A.R. 210, 211. These observations are consistent with the limitations Plaintiff described at the hearing, including Plaintiff's difficulty completing the "basic tasks of living," desire to isolate

15

himself, and need for reminders to complete tasks around the house, *see* A.R. 56-58, as well as the limitations he described in the Function Report. *See* A.R. 198-205. In sum, Ms. Sato's statement "does not describe any limitations not already described by" Plaintiff, and the court has already concluded that the ALJ did not err in assessing his credibility. Accordingly, the court concludes that any error with respect to Ms. Sato's statement was harmless. *See Molina*, 674 F.3d at 1122.

### D. The ALJ's Step Five Determination

Finally, Plaintiff argues that the ALJ's determination at step five that he could perform the occupations of assembler, production; office clerk paster; clerk/addresser; and packer was not supported by substantial evidence. According to Plaintiff, these jobs "are improper for someone with [Plaintiff's] limitations as found by the ALJ," because all four jobs have GED reasoning levels of two. Mot. 21. GED level two requires that an individual "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002-03 (9th Cir. 2015). Plaintiff argues that these jobs require the ability to "carry out detailed" instructions, but that the ALJ's RFC indicated that Plaintiff is "precluded from performing complex and detailed tasks." Mot. 21 (quoting A.R. 25).

Plaintiff's position is without merit. Although the ALJ precluded Plaintiff "from performing complex and detailed tasks," she concluded that Plaintiff "remains capable of performing short, simple, repetitive tasks." A.R. 25. The Ninth Circuit has held in unpublished decisions that an RFC limitation to "simple tasks" is consistent with reasoning level two. *Abrew v. Astrue*, 303 F. App'x 567, 570 (9th Cir. 2008); *Hernandez v. Berryhill*, 707 F. App'x 456, 458 (9th Cir. 2017).

Finally, Plaintiff argues that the ALJ erred at step five because the hypothetical she provided to the VE did not contain Plaintiff's "credible allegations," the limitations Ms. Sato described, and the limitations assessed by Plaintiff's treating and examining providers. Mot. 23. This argument is duplicative of Plaintiff's other arguments, which the court has already rejected. The court concludes that the ALJ's step five finding was supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, the court denies Plaintiff's motion and grants the Commissioner's cross motion.

**IT IS SO ORDERED.**

Dated: September 25, 2023



Donna M. Ryu
Chief Magistrate Judge